## IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

**B.B.,[1]**
  **Plaintiff.**

**v.**            **Civil Action No. _____**

**UNITED STATES OF AMERICA; and**
**SENIOR OFFICER SPECIALIST GREGORY D. BARRETT,**

  **Defendants.**

## COMPLAINT

Plaintiff, B.B., was sexually assaulted, battered and abused by a Bureau of Prisons ("BOP") employee while incarcerated at the federal prison in Lexington, Kentucky known as the Federal Medical Center Lexington (FMC Lexington).  By and through her attorneys, B.B. brings claims based upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* and/or other applicable law. As a result of being repeatedly sexually assaulted and abused by a BOP employee while she was an inmate at FMC Lexington, B.B. suffered injuries to her person, including, but not limited to physical battery, sexual abuse, sexual assault, and the dignitary injury of being forced to endure sexual activity to which she had neither the legal nor volitional capacity to consent, and from which she had no lawful means of escape. For her complaint against the Defendants, B.B. states as follows:

## PARTIES

1. Plaintiff B.B. was, at all times relevant to this complaint, in the custody of the Federal Bureau of Prisons ("BOP"), including at FMC Lexington, which is the prison facility located

---

[1] These initials, and all initialized references to inmate victims of sexual assault at FMC Lexington, are pseudonyms used to protect the subject's identities for personal safety reasons. These individuals have legitimate fears of retaliation from prison officials and/or present or former inmates for making public allegations regarding prison officials.

within the Eastern District of Kentucky where the physical battery, sexual abuse, and sexual assaults described herein occurred. B.B. currently is residing in a half-way house in Lexington, Kentucky.

2. Defendant United States of America is a sovereign entity named herein pursuant to the Federal Tort Claims Act and oversees the Federal Bureau of Prisons, which is responsible for the care and custody of federal inmates, including those placed in the custody of the BOP at FMC Lexington.

3. Defendant, Gregory D. Barrett, was at times relevant to this complaint employed by the BOP as a correctional officer working at FCI Lexington (hereinafter "FCI") in Kentucky.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1346 (b)(1) as the claims in this case are brought against the United States of America under the Federal Tort Claims Act, 28 U.S.C. 2671, *et seq.*

5. Plaintiff filed an Administrative Claim (Standard Form 95) against the Defendant, which was received and acknowledged by the Federal Bureau of Prisons Consolidated Legal Center on February 2, 2024.

6. Although the acknowledgement letter stated that the United States of America has six months from the dates of receipt of B.B.'s claim to review, consider, and adjudicate, no answer or response has been received as of the date of this filing.

7. Plaintiff has exhausted all obligatory administrative remedies, and this matter is ripened for the bringing of this civil action against Defendant United States of America.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b), as the acts and omissions complained of by Plaintiff occurred in Fayette County, Kentucky, which is in the Eastern District of Kentucky.

**FACTS**

9. At FMC Lexington, the BOP employs various facilities staff, including food service personnel. The food service personnel are trained, managed, overseen, and paid by the BOP through the United States Department of Justice.

10. As a federal inmate, B.B. was committed to the Defendant's care, custody, and control, and while in such custody, federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide protection … of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3).

11. As a federal inmate, B.B.'s options for escaping physical battery or sexual assault or for resisting the sexually abusive conduct of a BOP employee were limited. B.B. – like all inmates at FMC Lexington – relied on employees of the BOP to protect her from sexual abuse by other employees and staff.

12. BOP officials are aware that construction and age of FMC Lexington prevent the effective use of surveillance cameras to monitor the building and that FMC Lexington has numerous blind spots where inmates have been sexually assaulted by BOP staff.

13. BOP officials are aware that due to the nature and inmate population at FMC Lexington only one Correction Officer is on duty at that facility per shift.

14. BOP officials are aware that the surveillance cameras at FMC Lexington are not monitored because of the limited Corrections Officers working at that facility each shift.

15. During the relevant time period, the Defendant employed Corrections Officer Gregory Barrett who was employed at FMC Lexington.

16. As a Corrections Officer, Gregory Barrett was responsible for, among other things, supervising inmates at FMC Lexington, including Plaintiff B.B.

17. Gregory Barrett was acting under color of law and within the scope of their employment with the Defendant at all relevant times.

18. As a condition of their employment, Gregory Barrett was or should have been required to attend and complete the BOP's Correctional Training Program, Phases I (an introductory two-week course) and II (a three-week long course). Gregory Barrett was or should also have been required to attend an additional week of training specific to the supervision of female offenders. Moreover, annually, or otherwise periodically, Gregory Barrett should have received refresher training and continuing education on the prohibition against sexual abuse of inmates.

19. The BOP's policies are contained in documents called "program statements" which set forth rules and procedures that all BOP employees are required to follow.

**BOP Program Statement 3420.11 – Standards of Employee Conduct**

20. Program Statement 3420.11 sets out the duties and responsibilities of all BOP employees. It requires that "Employees must:… As soon as practicable (but no later than 24 hours) report to their CEO (or other appropriate authority such as the Office of Internal Affairs or the Office of the Inspector General) any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation. Every employee is required to immediately report to management, any act or omission by any person that could result in a breach of institution security. Failure by employees to follow these regulations and policy or any other Bureau

4

policy or relevant regulation(s) could result in disciplinary action, up to and including removal."

21. Program Statement 3420.11 mandates that: "An employee shall not engage in, or allow another person to engage in, sexual behavior with an inmate. There is never any such thing as *consensual* sex between staff and inmates."

22. Program Statement 3420.11 defines sexual contact and the consequences of any violations.

23. Program Statement 3420.11 states that: "Employees are subject to administrative action, up to and including removal, for any inappropriate contact, sexual behavior, or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime. Physical contact is not required to subject an employee to sanctions for misconduct of a sexual nature."

24. Program Statement 3420.11 further states that "Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened. Sexual contact is defined as the intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person. All allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution."

25. Each new BOP employee, contractor, and volunteer must receive and sign a form acknowledging receipt of Program Statement 3420.11.

26. As a condition of his employment, Gregory Barrett did or should have signed acknowledgement that he received the updated version of Program Statement 3420.11.

**BOP Program Statement 5324.12 - Sexually Abusive Behavior Prevention and Intervention**

27. BOP Program Statement 5324.12 contains directives requiring BOP officials to timely report and investigate any information regarding sexual assault in any of its facilities.

5

28. BOP statement 5324.12, § 115.61 requires that "[a]ll staff *must* report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or, where appropriate, in accordance with the Program Statement [3420.11,] Standards of Employee Conduct."

29. BOP Statement 5324.12, § 115.71 also contains directives regarding sexual assault investigations.

30. BOP Statement 5324.12, § 115.71 requires "prompt[], thorough[], and objective[]" investigations into all reports of sexual abuse or harassment.

31. BOP Statement 5324.12, § 115.71 provides a reporting chain following sexual abuse allegations: the Warden must be immediately notified, who must notify the Regional Director and the Office of Internal Affairs, who must notify the Office of the Inspector General, and where appropriate, the Federal Bureau of Investigations.

32. BOP Statement 5324.12, § 115.71 requires that the investigation be "documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings."

33. BOP Statement 5324.12, § 115.71 requires that the investigation must "include an effort to determine whether staff actions or failures to act contributed to the abuse."

34. BOP Statement 5324.12, §§ 115.61(a), 115.71 require reporting of sexual abuse incidents no later than 24 hours and the immediate investigation of reports.

35. BOP Program Statement 5324.12 implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and provides guidelines to address prohibited and/or illegal sexually abusive behavior, specifically including "Staff perpetrator against inmate victim."

36. Program Statement 5324.12 is the controlling BOP policy addressing the prevention of, and intervention upon, sexually abusive behavior. It is disseminated agency-wide and applies to all facilities operated by the BOP and every staff member working within each correctional facility.

37. Program Statement 5324.12 lays out duties and responsibilities with respect to conduct for all BOP employees, and mandates particular staff and agency reporting duties with respect to sexually abusive behavior, including concerning incidents or possible incidents of sexual abuse or sexual harassment.

38. Program Statement 5324.12, § 115.61(a) quotes 28 C.F.R. § 115.61's requirement that the BOP "shall require all staff to report immediately and according to [BOP] policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the [BOP]; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."

39. BOP policy requires the training of all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures.

40. Inmates, employees, and members of the public may file a complaint at the BOP facility where an incident of sexual abuse occurred; through BOP's Office of Internal Affairs; or with the Department of Justice Office of Inspector general (OIG).

41. In accordance with the agency's own Standards of Employee Conduct, BOP employees must report any violation of those Standards, or any rule or law within one business day of the incident to their Chief Executive Officer (CEO), OIA, or the OIG. Decisions regarding

disciplinary action in cases where the allegations are sustained are managed by BOP's Human Resources Management (HRM) and BOP's Office of General Counsel.

**The Sexual Abuse and Sexual Assaults of B.B.**

42. At all times relevant to this complaint, Gregory Barrett worked as a Night Shift Unit Officer at FMC Lexington and routinely reported for his night shifts each week.

43. At all times relevant to this complaint, Plaintiff B.B. was an inmate at FMC Lexington who was under the direct supervision of Gregory Barrett.

44. In or around the end of June, 2022, over the course of one week, Gregory Barrett began systematically isolating and sexually assaulting B.B. at night.

45. B.B. had inquired to Gregory Barrett about her drug screen that she was required to close with a lid on the sample cup. Barrett later called B.B. to the side and stated she had passed the drug screen and that she 'owed' him. B.B. laughed at his statement. He further stated he went through the garbage in the bathroom where her test cup was and said it was clean.

46. Two days later, Gregory Barrett instructed B.B. to go downstairs to the officer's station after midnight. When B.B. arrived, he instructed her to sit in a chair. He then began asking questions about her fiancée. Barrett then moved over between B.B.'s legs and used his leg to open her knees. He then used his knee to rub her vaginal area over her clothing. Barrett continued this behavior for several minutes.

47. Barrett then grabbed his radio and keys and told B.B. to come with him for rounds in the basement where the television and library are located.

48. Barrett then took B.B. to the GED classroom and locked the door. Barrett then directed B.B. to sit on a desk. He then rubbed her vaginal area outside her clothes with his hands for about 20 minutes.

8

49. Barrett then stated he needed to get rid of his hard-on before the guard came for the 3:00 a.m. count. He directed B.B. to return the following night but she did not.

50. The following morning, B.B. was feeling sick. Other inmates got a nurse and B.B. was placed on medical care and was off work for a week.

51. That night, Barrett came to B.B.'s room and stopped at her door while she pretended to be sleeping.

52. The following day, Barrett worked quarantine and stopped B.B. to inquire why she did not come downstairs. B.B. stated she was sick. Barrett said he would be in the gym after the 12 count and for B.B. to come to the gym.

53. After the 12 count, B.B. went to the basement. It was dark. She started to leave and heard Barrett's keys jingle.

54. Barrett was sitting on a weight bench. He had B.B. straddle him and he rubbed her vaginal area outside of her clothes.

55. When B.B. thought he was done, she started to leave. While she was in the hallway, Barrett pushed her against a wall, and forced his hand inside B.B.'s pants and said, "Look what you made me do."

56. Barrett then took B.B. to a visitor's bathroom and pushed B.B. to her knees and forced her to perform oral sex. B.B. told Barrett "no" but he continued to push his penis in her mouth. B.B. got up and ran upstairs.

57. B.B. told inmate C.M. about Barrett's conduct.

58. The following day, B.B. was awakened at 9:30 a.m. and directed to the administrative building where she was asked what was happening at camp and whether she knew anything about

officers and inmates.  B.B. was also questioned about she and Barrett.  B.B. denied knowing anything.

59. When B.B. was leaving FMC Lexington to a county facility on or about July 15, 2022, Barrett told B.B. that people were talking about them, and she better keep her mouth shut.

60. In August of 2022, B.B. was interviewed by a SIA who questioned her about Officer Barrett and asked whether she told another inmate about Barrett and if she had got in Barrett's truck.

61. B.B. filed a PREA report in November, 2022.

62. B.B. was informed in or around November, 2022, that Barrett was removed from the facility. B.B. asked if she could stay at FMC Lexington if she would report what happened with Barrett. B.B. was told by the ISA that he would get approval for her to stay and she could sleep at the county facility.

63. B.B. did not consent to any sexual contact, abuse, or assault, nor did she have the capacity to do so under BOP Program Statement 3420.11.

64. B.B. understood that Barrett was in a position to invoke retaliatory punishment if she attempted to defend herself during an attack.

65. B.B. did not report these physical batteries, sexual abuses, and/or sexual assaults by Barrett for fear of retaliation by Barrett and the other guards and staff at FMC Lexington.

### COUNT I –Defendant United States of America - FTCA: Negligence

66. B.B. re-alleges and incorporates by reference all of the preceding allegations of this Complaint.

67. Barrett sexually abused and otherwise touched B.B. on two occasions in June, 2022.

68. Barrett's touching and sexual assault of B.B. was intentional, was conducted in a harmful or offensive manner, occurred with sexual overtones, and was unwelcomed by B.B.

69. All of Barrett's acts and omissions were taken while acting under color of law and in the scope and course of his position as an employee at FMC Lexington.

70. Defendant United States of America is responsible for the oversight and training of its employees, including Gregory Barrett, other officers and staff at federal correctional institutions, including FMC Lexington.

71. Defendant United States of America owed a legal duty to B.B. and other inmates to ensure that Gregory Barrett was properly trained and supervised on all aspects of his employment, including compliance with Program Statement 3420.11 and Program Statement 5324.12.

72. Defendant United States of America owed a legal duty to B.B. and other inmates to prevent them from being subjected to sexual assault, sexual abuse, harassment, and injury by employees under its supervision including Lopez.

73. Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the negligent or wrongful acts of its employees acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable in accordance with the laws of the State of Kentucky.

74. Federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection . . . of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3).

75. Defendant United States of America and the supervisors and employees of FMC Lexington have a duty to provide inmates, being in their custody, with a safe and secure environment, free of dangers, including the dangers of sexual harassment and sexual assault.

76. As a premises owner/operator, the United States has a duty to provide inmates with a reasonably safe place, which specifically includes a place reasonably free and safe from known or suspected sexual abusers and/or individuals who pose a foreseeable risk of sexual abuse or rape.

77. Prison officials at FMC Lexington have a non-discretionary duty, pursuant to PREA, to enforce a policy of "zero-tolerance" with respect to sexual abuse of inmates by staff.

78. Prison officials at FMC Lexington have a duty to protect inmates from harm caused by other prison officials.

79. Prison officials at FMC Lexington have a duty to disallow or sufficiently monitor and supervise one-on-one inmate/employee interactions.

80. Prison officials at FMC Lexington have a duty to house inmates in a safe and secure manner.

81. Pursuant to 28 C.F.R. § 115.31, BOP and FMC Lexington had a non-discretionary duty to train employees on how to prevent sexual abuse and sexual harassment, the right of inmates to be free from sexual abuse and harassment, the dynamics of sexual abuse and harassment, the common reactions of sexual abuse and harassment victims, and how to detect and respond to signs of threatened and actual sexual abuse and to ensure that such training was properly followed. BOP and FMC Lexington breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

82. BOP and FMC Lexington had a non-discretionary duty to train employees and advise inmates of their right to be free from retaliation for reporting incidents of sexual harassment and sexual abuse by prison officials and to ensure that such training was properly followed. Plaintiff was retaliated against, and therefore BOP and FMC Lexington breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

12

83. BOP supervisory officials have a duty to monitor, supervise, train, and discipline correctional staff at FMC Lexington to ensure that correctional staff properly perform their PREA-mandated duties so that inmates' Eighth Amendment rights are not violated.

84. Prison officials and employees at FMC Lexington knew or should have known that Barrett should not have been permitted to have unsupervised access to inmates, including B.B., to whom he posed an excessive and unreasonable risk.

85. Once Barrett began his sexual assaults of Plaintiff, other prison officials and employees at FMC Lexington knew or should have known that it was occurring, but they failed to appropriately act to halt the assaults.

86. Through the conduct of Barrett and other BOP employees, all of the duties encompassed by this count were breached, and as a proximate result Plaintiff sustained injuries and damages.

87. As a direct and proximate result of these breaches of duties, B.B. suffered personal injuries associated with and arising from multiple sexual assaults and battery including, but not limited to, severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation, and Defendant United States of America is consequently liable to Plaintiff for all of her compensatory damages recognized and allowable under applicable law.

### COUNT II- CLAIMS AGAINST BARRETT PURSUANT TO THE EIGHTH AMENDMENT TO THE UNITED STATES CONSITUTION

88. B.B. re-alleges and incorporates by reference all of the preceding allegations as if set forth herein.

89. As an inmate in the custody of the United States BOP, B.B. had a clearly established right under the Eighth Amendment to the United States Constitution not to be subjected to cruel and unusual punishment while incarcerated.

13

90. Defendant Barrett's actions constitute cruel and unusual punishment in the forms of sexual abuse, assault, battery and rape.

91. B.B. was not sentenced with a prescription for any form of sexual abuse; it is not a legitimate form of punishment. It is not an ancillary component of any prison sentence, and it serves no legitimate penal purpose.

92. All of Defendant Barrett's acts and omissions were taken while acting under color of law and in the scope and course of his position as a correctional officer.

93. Defendant Barrett, individually, failed in his duty to provide B.B. with constitutionally safe and secure conditions or confinement.

94. Defendant Barrett acted intentionally, maliciously, oppressively and/or with gross negligence against Plaintiff's constitutional rights.

95. As a direct and proximate result of Defendant Barrett's misconduct, B.B. was subjected to physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation.

96. Defendant Barrett's conduct was of such a quality and nature as to warrant his liability for punitive damages, in accordance with applicable law.

97. B.B. is also entitled to recover from Defendant Barrett all compensatory damages recognized by applicable law.

**COUNT III – CLAIMS AGAINST BARRETT FOR VIOLATIONS OF
THE LAWS AND CONSTITUTION OF KENTUCKY AND THE UNITED STATES IN
VIOLATION OF 42 U.S.C. 1983**

98. Plaintiff re-alleges and incorporates by reference all the preceding allegations as if set forth herein.

99. The laws and constitutions of the State of Kentucky and the United States of America, including, but not limited to 42 U.S.C 1983 and the Eighth Amendment to the United States Constitution include provisions prohibiting cruel and unusual punishment.

100.    As described above, Defendant Barrett has violated clearly established laws of the State of Kentucky and the United States of America in his actions toward Plaintiff.

101.    Defendant Barrett was acting under color of law as described above during his actions.

102.    Because the actions of Defendant Barrett involved "a reckless or callous indifference to the federally protected rights of" Plaintiff, an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:l 5-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

103.    Defendant Barrett was acting in his capacity as a prison official, under color of law, when he committed these acts in violation of clearly established laws of the State of Kentucky and the United States as described above and including, but not limited to, the Eighth Amendment to the United States Constitution.  Accordingly, under 42 U.S.C. § 1983 and similar doctrines adopted by the State of Kentucky, Defendant Barrett is liable for the damages resulting from Plaintiff's injuries and pain and suffering.

104.    Defendant Barrett deprived Plaintiff of significant legal rights in violation of 28 U.S.C. 1983 as described in the factual assertions mentioned above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Honorable Court grant her the following relief:

1. Compensatory damages as to all Counts;

2. Reasonable attorneys' fees and costs in accordance with applicable law; and,

3. Such other further relief as this Court in its discretion deems just.

## JURY DEMAND

Plaintiff hereby demands a jury trial on any and all Counts so triable under applicable law.

Respectfully submitted,

**B.B.,**
**By counsel**

/s/ Amanda J. Davis, Esq. (WV Bar No. 9375)
L. Danté diTrapano, Esq. (WV Bar No. 6778)
Charles F. Bellomy, Esquire (WVSB #9117)
CALWELL LUCE DITRAPANO PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV 25302
304-343-4323 Telephone
304-344-3684 Facsimile
adavis@cldlaw.com
dditrapano@cldlaw.cm
cbellomy@cldlaw.com

and

David G. Bryant, Esq. (KBN #91351)
David Bryant Law, PLLC
600 W. Main Street, STE 100
Louisville, KY  40202
P: 502-540-1221 F: 502-540-1200
david@davidbryantlaw.com

*Counsel for Plaintiff*

16