UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **B.B,** | CIVIL ACTION NO. 5:24-CV-200-KKC |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| **UNITED STATES OF AMERICA, et al.,** | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

The matter is before the Court on defendant United States of America's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (DE 13.)[1]

## I.   Factual Background

Gregory Barrett ("Officer Barrett") worked as a corrections officer at FMC Lexington as a Bureau of Prisons ("BOP") employee. The BOP is a component of the United States Department of Justice. Plaintiff B.B. was an inmate at FMC Lexington and under the direct supervision of correction officers such as Officer Barrett. Over the course of one week around the end of June 2022, Officer Barrett sexually assaulted B.B. on two occasions. The United States prosecuted Officer Barrett, and he pleaded guilty. He was sentenced to twelve months and one day in prison, five years supervised release, and assessed a monetary penalty.

After properly exhausting her administrative remedies, B.B. sued the United States under the Federal Tort Claims Act ("FTCA"), alleging one count of negligence.[2] Her complaint

---

[1] A motion for an extension of time to file a response (DE 14) is also pending. The United States has not objected. The Court will proceed by granting the motion for an extension of time and consider the response (DE 15) timely.
[2] B.B.'s complaint also brings claims against Officer Barrett for violations of her constitutional rights.

alleges that acts and omissions by BOP officials acting within the scope of their employment with the federal government permitted and caused the sexual assaults perpetrated by Officer Barrett. Specifically, B.B. claims the physical layout of FMC Lexington; the failure of BOP officials to supervise and train Officer Barrett; and the failure of BOP officials to properly report and investigate instances of sexual abuse all contributed to the injuries she suffered as a result of the sexual assaults.

## II. Motion to dismiss under Rule 12(b)(1)

The United States moves to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Under the FTCA, the United States has waived its sovereign immunity in "certain tort suits." *Allen v. United States,* 83 F.4th 564, 567 (6th Cir. 2023*).* "Absent a waiver," however, "sovereign immunity shields the Federal Government and its agencies from suit." *Mynatt v. United States*, 45 F.4th 889, 894 (6th Cir. 2022) (citation omitted). The issue of sovereign immunity implicates the Court's subject matter jurisdiction. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). If the United States retains its sovereign immunity with respect to a given claim, the Court does not have subject matter jurisdiction over that claim. *Id*. The burden of showing jurisdiction lies with the party asserting it. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).

The United States' motion is a facial attack on jurisdiction, which requires the Court to consider "whether the plaintiff has alleged a basis for subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Generally, to allege a basis for subject matter jurisdiction under the FTCA, a plaintiff's claim must satisfy six essential requirements: (1) the claim must be brought against the United States, (2) for money damages, (3) for injury or loss of property, or personal injury or death, (4) the injury must be caused by the negligent or wrongful acts or omissions of any employee of the United States, (5) while acting within the scope of his or her office or employment, (6) under circumstances

2

where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b).

### A. Plaintiff's sexual assault claim alleged against the United States

At the outset, the Court notes that the parties debate whether B.B. charges the United States with liability regarding the sexual assaults perpetrated by Officer Barrett. While the complaint only contains one count of negligence alleged against the United States, portions of B.B.'s complaint are inconsistent with a one-count negligence lawsuit and indicate she may be claiming the United States is liable for the sexual assaults. For the following reasons, the United States is entitled to sovereign immunity to the extent B.B. does bring such a claim.

Under the FTCA, the United States has waived its sovereign immunity "to claims for six intentional torts, including assault and battery, that are based on the 'acts or omissions of investigative or law enforcement officers.'" *Millbrook v. United States*, 569 U.S. 50, 52-53 (2013) (quoting 28 U.S.C. § 2680(h)). For the purposes of its motion, the United States does not dispute that intentional torts committed by correctional officers at FMC Lexington would fall within this immunity waiver. Instead, the United States argues it retains its sovereign immunity because the sexual assaults committed by Officer Barrett were not acts falling "within the scope of his office." § 1346(b) (for a tort to be actionable under the FTCA, an employee must commit it "while acting within the scope of his office.").

"Whether an employee was acting within the scope of their federal employment . . . is governed by the agency law of the state in which the incident occurred." *Laible v. Lanter*, 91 F.4th 438, 445 (6th Cir. 2024) (citing § 1346(b)(1)). B.B. alleges acts occurring exclusively in Kentucky. Under Kentucky law, "[g]enerally, intentional torts are committed outside the scope of the employment." *Booker v. GTE.net LLC*, 350 F.3d 515, 518 (6th Cir. 2003)). Applying that general principle of Kentucky law, the Sixth Circuit has held that sexual

3

assault upon an inmate is not within a correctional officer's scope of employment. *Flechsig v. United States*, 991 F.2d 300, 303 (6th Cir. 1993).

Here, the sexual assaults committed by Officer Barrett did not occur within the scope of his employment with the BOP. While the sexual assaults did occur while Officer Barrett was on duty at FMC Lexington, the sexual assaults he committed are "obviously [] far from what he was employed to do." *Flechsig v. United States*, 991 F.2d at 303. Accordingly, to the extent B.B. charges the United States with liability under the FTCA with respect to the sexual assaults, the claim must fail. The FTCA is clear that the United States has not waived its sovereign immunity in cases in which one of its employees commits a tort outside of the scope of their employment. As such, the United States retains its sovereign immunity for this claim and the Court therefore lacks subject matter jurisdiction over it.

**B. Plaintiff's negligence claim(s) alleged against the United States**

Under the FTCA, the United States has waived "sovereign immunity in certain cases involving negligence committed by federal employees in the course of their employment." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 481 (2006). Here, B.B. charges the United States with a single count of negligence but offers several theories of liability. B.B. presents the following claims: (i) the United States, through the staff at FMC Lexington, failed to provide safekeeping and protection to her; (ii) the United States, through the staff at FMC Lexington, failed to comply with mandatory federal reporting requirements, including failure to timely report and investigate instances of sexual abuse; and (iii) the United States, through the staff at FMC Lexington, failed to sufficiently train and supervise Officer Barrett. In its motion to dismiss, the United States argues that an exception to the scope of the FTCA's waiver of sovereign immunity applies to B.B.'s claims—the discretionary function exception.

Under the FTCA's discretionary function exception, the United States has not waived its immunity for injuries caused by government employees' performance of discretionary acts.

4

28 U.S.C. § 2680(a). "The discretionary-function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). "[T]he proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more." *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984).

A two-part test determines whether challenged conduct falls within the exception. First, the Court asks whether conduct involves "an element of judgment or choice." *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 395 (6th Cir. 2004) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). If the answer is "yes," the Court then asks, "whether that judgment is of the kind that the discretionary function was designed to shield." *Id.* (quoting *Gaubert*, 499 U.S. at 322–23). If the answer to this question is also "yes," then a finding that the United States retains its sovereign immunity may be appropriate. *Id.* at 397.

Among B.B.'s negligence theories, she claims BOP officials failed to provide her with "safekeeping" and "protection" in violation of 18 U.S.C. § 4042(a)(2)–(3). The Sixth Circuit has held that although § 4042(a) "imposes a mandatory duty," on the BOP to provide safekeeping and protection, the statute "allow[s] BOP officials to exercise judgment when making decisions regarding [a prisoner's] safety." *Montez*, 359 F.3d at 396–97. Thus, in most FTCA cases involving alleged violations of § 4042(a), the discretionary function exception applies as both questions from the two-part test are answered in the affirmative. However, the second question may not be answered in the affirmative upon a showing that "federal officials [were] aware of a specific and immediate threat to an inmate's safety." *Id.* at 398.

This is a fact-specific inquiry which looks at whether the presence or absence of a specific and immediate threat demonstrates that the BOP's conduct was susceptible to policy considerations. *L. C. v. United States*, 83 F.4th 534, 549 (6th Cir. 2023).

With these standards in mind, the Court looks to the complaint in the present case. To support the failure to provide safekeeping and protection theory, B.B.'s complaint alleges that BOP officials were aware that the physical layout of FMC Lexington prevented the effective use of surveillance cameras to monitor the building. As a result, B.B. claims that FMC Lexington had numerous blind spots where inmates had been sexually assaulted by correction officers in the past. Further, B.B. claims that even where surveillance cameras were stationed, they were not monitored due to understaffing at the prison. B.B. claims that discovery in other cases involving instances of inmates being sexually assaulted at FMC Lexington predating her own assault establish that BOP officials knew of these issues. Despite this knowledge, B.B. alleges BOP officials took no remedial action.

Applying the two-part test to these facts, the Court finds the discretionary function exception applicable. This conclusion is consistent with holdings from other district courts in this circuit which have applied the discretionary function exception analysis to claims challenging the BOP's implementation and monitoring of security devices and claims premised on issues concerning prison layout. *See e.g., Strachan v. United States*, No. 08-CV-0394-GFVT, 2009 WL 1586812, at * 2, *7 (E.D. Ky. June 5, 2009) (exception applied to inmate's claim that BOP officials negligently failed to protect him in-part based on failure to monitor security cameras); *Lyons v. United States*, No. 4:03-CV-0244, 2007 WL 4553970, at *5 (N.D. Ohio Dec. 19, 2007) (exception applied to inmate's claim that the prison's design and layout contributed to his injuries). In short, BOP officials' decisions concerning the use of security devices and prison layout involve the sort of judgment and discretion the discretionary function exception was designed to shield.

6

Additionally, the Court finds that the "specific and immediate threat" consideration does not save B.B.'s claim. Put simply, the complaint includes no facts demonstrating that BOP officials were aware of a specific and immediate threat to B.B.'s safety preceding or during the sexual assaults perpetrated by Officer Barrett. Thus, the complaint fails to demonstrate that the BOP's decisions regarding the implementation and monitoring of security devices and prison layout were not based in policy considerations. Accordingly, for B.B.'s negligence claim premised on violations of § 4042(a), the United States retains its sovereign immunity, and the Court lacks subject matter jurisdiction to adjudicate the claim.

Tangentially, B.B.'s negligence claim premised on the failure of BOP officials to properly supervise and train Officer Barrett also implicates the discretionary function exception. This is because in applying the discretionary function test, the Sixth Circuit has held that supervision and training "require policy judgments—the type that Congress intended to shield from tort liability." *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014). Bound by precedent, the Court finds the discretionary function exception applicable to B.B.'s claim that BOP officials failed to supervise and train Officer Barrett. Accordingly, the United States retains its sovereign immunity with respect to that claim, and the Court lacks subject matter jurisdiction to adjudicate it.

The Court notes that the United States does not press for the application of the discretionary function exception to B.B.'s remaining negligence claim—that being that BOP officials were negligent in failing to timely report and investigate the sexual assaults perpetrated by Officer Barrett. Application of the discretionary function exception, however, implicates the Court's subject matter jurisdiction. And because the Court has an obligation to monitor its subject matter jurisdiction, the Court will determine whether the discretionary function exception applies to B.B.'s remaining claim. Fed. R. Civ. P. 12(h)(3).

One of the authorities that B.B. cites in her complaint is BOP Program Statement 5324.12, which specifically addresses sexual harassment and abuse in federal prisons.[3] The BOP issued Program Statement 5324.12 pursuant to the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. § 30307(a)(1), and PREA's implementing regulations, 28 C.F.R. § 115.11(a). Program Statement 5324.12 at 2. Together, these authorities contain "non-discretionary directives requiring BOP officials timely to report and investigate information regarding sexual assault in BOP facilities." *L. C.*, 83 F.4th at 546.

The Sixth Circuit has held the discretionary function exception inapplicable to FTCA negligence claims alleging violations of the authorities just discussed. *L. C.*, 83 F.4th at 544–50 ("Because BOP policy requires that its staff timely report and investigate any information pertaining to sexual assault or harassment by a BOP official, and, in any event, the decision to report and investigate is not susceptible to policy analysis, we hold that a properly alleged claim that the BOP acted negligently by failing timely to report and investigate information regarding sexual assault by a BOP official—as mandated by Program Statement 5324.12, §§ 115.61, 115.71—falls outside of the discretionary-function exception."). Therefore, the Court finds the discretionary function exception inapplicable to B.B.'s claim that BOP officials were negligent in failing to timely report and investigate the sexual assaults. Thus, the Court will turn to whether that claim has been sufficiently pled under the relevant standards.

### III. Motion to dismiss under Rule 12(b)(6)

At the motion to dismiss stage in a case arising under the FTCA, the requirements for "pleading a claim and pleading jurisdiction entirely overlap." *Brownback v. King*, 592 U.S. 209, 218 (2021). Thus, a plaintiff's complaint must plead "enough facts to state a claim to

---

[3] U.S. Dep't of Justice, Fed. Bureau of Prisons Program Statement 5324.12, Sexually Abusive Behavior Prevention and Intervention Program, https://perma.cc/G2C9-BRK4 [hereinafter Program Statement 5324.12].

relief that is plausible on its face," or the United States will "retain[] sovereign immunity," thereby "depriving the court of subject-matter jurisdiction." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007); *Brownback*, 592 U.S. at 218. On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)).

Here, B.B.'s only remaining claim against the United States is her negligence claim premised on the BOP's failure to report and investigate. Under Kentucky law,[4] a negligence claim requires proof that "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) [a] consequent injury [occurred]." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). "'Consequent injury' involves 'actual injury or harm to the plaintiff and legal causation between the defendant's breach and the plaintiff's injury.'" *L. C.*, 83 F.4th at 550 (quoting *Hammons*, 113 S.W.3d at 88–89). The United States argues that B.B.'s complaint lacks sufficient facts to establish either the second or third elements with respect to the remaining claim.

The United States first challenges the sufficiency of B.B.'s allegations regarding whether it breached a duty to report and investigate instances of sexual abuse. The scope of the BOP's duty to report and investigate instances of sexual abuse is set by Program Statement 5324.12 and 28 C.F.R. §§ 115.61 and 115.71. B.B.'s complaint notes these authorities and explains the specific reporting chain the BOP is required to use, the correct process for investigating abuse, and the proper timing for initiating an investigation. (DE 1 at Page ID# 5–7.)

---

[4] The FTCA requires courts to apply the substantive law of the place where the alleged tortious event occurred. § 1346(b).

After cataloging the specifics of the BOP's duty, B.B.'s complaint makes specific factual allegations relating to the issues of reporting and investigation. B.B. alleges that Officer Barrett sexually assaulted her multiple times over the course of one week towards the end of June of 2022. She then claims that after the final sexual assault perpetrated by Officer Barrett, she immediately told another inmate, C.M., about Barrett's conduct. According to the complaint, prison officials questioned B.B. the following morning about her involvement with Officer Barrett. She admits to denying any involvement with Officer Barrett during that interview. The complaint alleges B.B. was questioned again by a BOP official in August of 2022 about Officer Barrett, but the complaint does not indicate what she shared at that time. The only affirmative allegation in the complaint of B.B. reporting Officer Barrett's conduct to BOP officials is that she filed a PREA report in November of 2022. B.B. admits in her complaint that shortly after filing her PREA report, Officer Barrett was removed from FMC Lexington. B.B.'s complaint attributes the four-month delay in reporting to "fear of retaliation by Barrett and the other guards and staff at FMC Lexington," and claims that she was in fact "retaliated against," for reporting. (DE 1 at Page ID# 10, 12.) B.B., however, provides no further details regarding the retaliation she allegedly suffered.

Even taking the factual, non-conclusory allegations in the complaint as true, the Court finds the complaint lacks sufficient facts to support the breach element of B.B.'s negligence claim. Allegations in the complaint indicate that once BOP officials initially became aware of an alleged involvement between B.B. and Officer Barrett in June of 2022, an investigation was conducted but B.B. denied having any involvement with Officer Barrett. According to the complaint, this investigation was initiated just one day after B.B. had, for the first time, disclosed the sexual assaults to anyone. Moreover, the complaint contains no factual allegations that the BOP's reporting and investigation process was flawed after B.B. formally reported Officer Barrett's conduct by filing a PREA report. The only post-PREA report

10

information the complaint provides is that Officer Barrett was promptly removed from FMC Lexington. In short, B.B. does not allege a set of facts which reveal any errors, omissions, or misconduct that could constitute a breach of the BOP's duty to report and investigate instances of sexual abuse. Accordingly, B.B.'s complaint does not state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 555.

B.B.'s allegation regarding the delay in reporting caused by retaliation does not save the deficiency of her complaint with respect to her failure to report and investigate claim. This is because any allegation regarding retaliation implicates B.B.'s "failure to supervise and train" claim, which the Court lacks jurisdiction to adjudicate, rather than her "failure to report and investigate" claim. To be sure, the complaint itself alleges as follows:

> BOP and FMC Lexington had a non-discretionary **duty to train employees** and advise inmates of their right to be **free from retaliation for reporting** incidents of sexual harassment and sexual abuse by prison officials and to ensure that such training was properly followed. Plaintiff was retaliated against, and therefore BOP and FMC Lexington breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

(DE 1 at Page ID# 12) (emphasis added). Moreover, even if the retaliation allegations are relevant to B.B.'s remaining claim, they are entirely conclusory and do not warrant further factual inferences. *Gregory v. Shelby Cnty. Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000) ("[W]e need not accept as true legal conclusions or unwarranted factual inferences."). B.B.'s complaint fails to provide any detail regarding the retaliation or fear thereof she allegedly suffered. Accordingly, B.B.'s retaliation allegations do not save her remaining claim.

B.B.'s complaint is also void of facts demonstrating how a breach of the duty to report and investigate caused her a consequent injury. While the complaint, as detailed above, points to BOP officials' duties to report and investigate instances of sexual abuse, she makes no allegation that she was harmed by any failure of the BOP to comply with those duties. B.B. alleges that she "suffered personal injuries associated with and arising from multiple

11

sexual assaults and battery including, but not limited to, severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently." (DE 1 at Page ID# 13.) But the complaint does not allege that any of those injuries stem from the failure of BOP officials to properly report and investigate the sexual assaults perpetrated by Officer Barrett. B.B. does not allege she was subjected to additional abuse by Officer Barrett during any stage of the BOP's investigation process; nor does B.B. allege with sufficient detail an instance of retaliation during the course of the BOP's investigation process. Accordingly, B.B. does not allege a set of facts demonstrating that she suffered a consequent injury as a result of the BOP's alleged breach of its duty to report and investigate instances of sexual abuse. As such, her claim fails.

To summarize, the complaint fails to plead facts which could establish either the second or third elements of a negligence claim for B.B.'s allegation that BOP officials were negligent in failing to report and investigate instances of sexual abuse. As a result, the United States retains its sovereign immunity for that claim and the Court lacks subject matter jurisdiction to adjudicate it.

### IV. Conclusion

For the foregoing reasons, it is hereby ORDERED that

1. B.B.'s motion for an extension of time to file a response (DE 14) is GRANTED; and
2. the United States' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted (DE 13) is GRANTED.

This 12th day of December, 2024.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY